IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3160 |
| | § | (CRIMINAL NUMBER H-12-161-01) |
| SAMEH KHALED DANHACH | § | |

## MEMORANDUM OPINION AND ORDER

The defendant, Sameh Khaled Danhach, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and Correct Sentence ("§ 2255 Motion") (Docket Entry No. 489).[1] The United States has filed a Response to Motion for Relief Under 28 U.S.C. § 2255 ("United States' Response") (Docket Entry No. 504), to which Danhach has filed Petitioners Response in Opposition to Government Reply to Petitioners Title 28:U.S.C. Subsection 2255 ("Defendant's Reply") (Docket Entry No. 506). The court has carefully reviewed all submissions and the record in this criminal case. Based on this review, the court's clear recollection of the proceedings, and the application of governing legal authorities, the pending § 2255 Motion will be denied and the corresponding Civil Action No. H-16-3160 will be dismissed for the reasons explained below.

---

[1]Although a Civil Action Number has been assigned to the § 2255 Motion, all docket entries referenced are to Criminal No. H-12-161-01. For purposes of identification all page citations refer to the page number imprinted by the court's electronic filing system, CM/ECF.

# I. Background

A grand jury in this district returned a Superseding Indictment against Sameh Danhach charging him with conspiracy to transport stolen merchandise in interstate commerce in violation of 18 U.S.C. § 371 (count one), interstate transportation of stolen goods in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2 (counts two through four), and obstruction of justice in violation of 18 U.S.C. § 1512(c)(1) and 18 U.S.C. § 2 (counts five and six).[2]

At trial the government presented evidence that Danhach and his partner, Allet Alex Kheir, sold over-the-counter ("OTC") medication, brand-name baby formula, and other similar goods stolen from retail stores and pharmacies, which they repackaged and resold for a fraction of their retail value. The evidence established that Danhach rented a warehouse in Houston to conduct these activities. Kheir gave federal agents permission to enter the warehouse, where they saw in plain view OTC medication and other items consistent with an organized retail theft operation. These observations served as evidence to support a search warrant that was later issued and executed. After hearing all the evidence, the jury found Danhach guilty as charged on all counts.[3]

The Probation Office prepared a Presentence Investigation Report ("PSR") for the purpose of determining Danhach's punishment

---

[2]See Superseding Indictment, Docket Entry No. 169, pp. 1-10.

[3]See Verdict, Docket Entry No. 262, pp. 1-2.

under the United States Sentencing Guidelines.[4]  Danhach was
assigned a base offense level of 6 -- applicable for offenses under
18 U.S.C. § 2314.[5]  The Probation Office recommended an 18-level
enhancement for the amount of loss, which exceeded 2.5 million
dollars, and a 4-level increase for other specific offense
characteristics.[6]  It recommended a 4-level enhancement for
Danhach's role as an organizer/leader of criminal activity that
involved five or more participants or was otherwise extensive.[7]
Assessing an additional 2 levels for obstruction of justice, the
Probation Office determined that Danhach's total offense level was
34.[8]  With no criminal history points, Danhach's advisory guideline
range was 151-188 months in prison.[9]  Defense counsel filed
numerous objections to the PSR.[10]  On May 22, 2014, the court
sentenced Danhach to serve 151 months' imprisonment followed by a
three-year term of supervised release.[11]  The court also ordered

---

[4]See PSR, Docket Entry No. 330, p. 25.

[5]Id.

[6]Id.

[7]Id.

[8]Id.

[9]Id. at 31.

[10]See Sentencing Memorandum, Docket Entry No. 333, pp. 1-5.

[11]See Judgment in a Criminal Case, Docket Entry No. 336,
pp. 3-4.

Danhach to pay a $600 assessment and to make restitution in the amount of $540,685.26.[12]

On direct appeal Danhach argued that the district court should have (1) granted his motion to suppress, (2) ruled the evidence presented at trial insufficient to support five of his counts of conviction, and (3) sentenced him differently.[13] See <u>United States v. Danhach</u>, 815 F.3d 228, 232 (5th Cir. 2016). The Fifth Circuit summarized all of the evidence presented at trial and rejected Danhach's arguments, affirming the conviction and sentence.[14] <u>Id.</u> at 239. The Supreme Court denied Danhach's petition for writ of certiorari on October 3, 2016.[15] See <u>Danhach v. United States</u>, 137 S. Ct. 119 (2016).

On October 17, 2016, Danhach filed the pending § 2255 Motion. Danhach contends that he is entitled to relief from his conviction and sentence because he was denied effective assistance of counsel at his trial.[16] The government argues that Danhach is not entitled to relief and that the § 2255 Motion must be denied because his claims lack merit.[17]

---

[12]<u>Id.</u> at 6.

[13]<u>See</u> Per Curiam of the United States Court of Appeals for the Fifth Circuit ("Per Curiam"), Docket Entry No. 484, p. 2.

[14]<u>Id.</u> at 13.

[15]<u>See</u> Order of the Supreme Court of the United States, Docket Entry No. 488, p. 1.

[16]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 5, 6, 8, 11, 13, 16, 17, 18, 19, 21, 22.

[17]<u>See</u> United States' Response, Docket Entry No. 504, p. 1.

## II.  Standard of Review

A prisoner serving a sentence imposed by a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

A prisoner seeking relief under 28 U.S.C. § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  <u>United States v. Frady</u>, 102 S. Ct. 1584, 1593 (1982).  After a conviction has been affirmed on appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted."  <u>United States v. Willis</u>, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted).  For this reason, "[r]elief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992).

Mindful of the defendant's pro se status, the court has liberally construed his § 2255 Motion and related filings.  <u>See</u>

-5-

Estelle v. Gamble, 97 S. Ct. 285, 292 (1976) ("[A] . . . handwritten pro se document is to be liberally construed."); Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam) (stating that pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, a pro se petitioner's "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

## III. Discussion

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. See Yarborough v. Gentry, 124 S. Ct. 1, 4 (2003). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). A defendant asserting ineffective assistance of counsel therefore must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. Id. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997). "A court

need not address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994).

"The performance prong of <u>Strickland</u> requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted). "Therefore, courts may not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance." <u>Carter</u>, 131 F.3d at 463 (quoting <u>Strickland</u>, 104 S. Ct. at 2065-66). "Hence, there is a strong presumption that the performance 'falls within the wide range of reasonable professional assistance.'" <u>Id.</u> (same). The burden is on the defendant to overcome this presumption. <u>Id.</u> And "[i]nformed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed." <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999).

To establish <u>Strickland</u> prejudice a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> The defendant therefore "must establish that the attorney's errors were so deficient as to render the verdict fundamentally unfair or unreliable." <u>Carter</u>, 131 F.3d at 463. The

burden is on the defendant to affirmatively prove prejudice. Strickland, 104 S. Ct. at 2067.

## B.    Danhach's Ineffective-Assistance Claims

Danhach alleges that he was denied effective assistance by his trial attorney, Matt Hennessy.    Construed liberally, Danhach contends that he was denied effective assistance of counsel at trial because:    (1) Hennessy had a direct conflict of interest concerning the recovery of a DVR hard drive; (2) Hennessy failed to request a second Garcia hearing following the filing of the obstruction of justice charge; (3) Hennessy failed to retain a second translator to translate the phone calls between Danhach and Kheir; (4) Hennessy wrongly agreed to a stipulation concerning the DVR hard drive; (5) Hennessy failed to object to the chain of custody and authenticity of the DVR hard drive; (6) Hennessy failed to object to the loss amount calculated in the PSR and failed to request an evidentiary hearing on the loss amount; (7) Hennessy had a direct conflict of interest from a prior attorney-client relationship with Mr. Mohammed Mokbel; (8) Hennessy failed to negotiate a plea agreement between Danhach and the United States; (9) Hennessy incorrectly advised Danhach about the maximum penalties applicable to the charged offenses; (10) Hennessy failed to call impeaching, exculpatory, and favorable witnesses on Danhach's behalf and failed to object to the lack of evidence; (11) Hennessy deprived Danhach of the opportunity to exclude his

-8-

2008 arrest at a Wal-Mart store; (12) Hennessy failed to request a speedy trial; (13) Hennessy failed to call witnesses to demonstrate that Danhach had purchased some merchandise legitimately; and (14) Hennessy failed to object to the four-level increase to his offense level on the PSR for his leadership role.[18]  Trial counsel, Matt Hennessy, filed a sworn affidavit responding to most of these claims.[19]  The court will group Danhach's arguments in a different order in the analysis below for organizational purposes.

1.   <u>Claims Involving the DVR Hard Drive:  Claims 1, 2, 3, 4, and 5</u>

Five of Danhach's claims of ineffective assistance of counsel stem from the circumstances surrounding his conviction for aiding and abetting obstruction of justice based on the concealment of a DVR hard drive containing video recordings of the warehouse.  The parties stipulated that the hard drive was placed in the attic or ceiling of the warehouse on March 1, 2012, after agents arrived but before the search warrant was executed.[20]  The Fifth Circuit summarized the evidence at trial:

> In two recorded jailhouse calls that Danhach made to Kheir, Danhach——speaking mostly in Arabic and seemingly making a conscious effort to be vague——instructed Kheir to "remove" something, referenced an "attic," and warned him that he would be searched when he left the warehouse. Just after these calls, Kheir locked the warehouse door, and the video recordings stored on the hard drive skipped

---

[18]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 5-23.

[19]<u>See</u> Declaration of Matt Hennessy ("Hennessy Declaration"), Docket Entry No. 497.

[20]<u>See</u> Agreed Stipulation, Docket Entry No. 256, p. 1.

and then ceased. The jury reasonably could have inferred
from these facts that Danhach directed Kheir to hide the
hard drive from law enforcement agents, which Kheir
did.[21]

Danhach, 815 F.3d at 237. Hennessy learned of the hard drive
through privileged communications with Danhach. On August 7, 2012,
Hennessy went to the warehouse with a licensed private investigator
and, with the tenant's permission, observed what appeared to be the
hard drive in the attic space above the office.[22] Hennessy asked
the tenant if he would allow a vendor to recover the hard drive and
the tenant responded that he wished to speak to his landlord.[23]
Unknown to Hennessy, the landlord's maintenance person recovered
the hard drive around mid-August of 2012.[24] The landlord stated
that he would not attempt to view the contents of the hard drive
and would allow a third-party computer forensics firm to retrieve
it.[25] Because the forensics firm that retrieved the hard drive was
unable to access the data, it transferred the hard drive to a
second firm that had similar difficulties, but a third forensics
firm was able to retrieve and copy the data.[26] A complete copy was

_____

[21]See Per Curiam, Docket Entry No. 484, p. 10.

[22]See Hennessy Declaration, Docket Entry No. 497, p. 6;
Danhach's Response to Government's Notice of Potential Conflict
("Danhach's Response"), Docket Entry No. 155, pp. 1-2.

[23]Id.

[24]See Hennessy Declaration, Docket Entry No. 497, p. 7;
Danhach's Response, Docket Entry No. 155, p. 2.

[25]Id.

[26]Id.

not available for viewing until September 1, 2012.[27]  The video was provided to co-defendant Kheir's counsel.[28]  After viewing the video, Hennessy and counsel for Kheir sought and followed ethical advice from legal ethics expert, Professor Monroe Freedman.[29]  On September 18, 2012, Hennessy provided the government with the original hard drive, a forensic copy, and the hardware needed to view the data on the copy.[30]

### a.  Claims 1 and 2

Danhach alleges that Hennessy "created a direct conflict of interest" when he recovered the DVR hard drive from the ceiling of his warehouse because Hennessy then became a witness against Danhach in the obstruction of justice charge.[31]  Before the government filed the Superseding Indictment that added the obstruction charge, the court held a Garcia hearing to determine whether Danhach waived his Sixth Amendment right to representation that is free from any conflict.  United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006).  At the hearing the court ruled that

---

[27]See Hennessy Declaration, Docket Entry No. 497, p. 7.

[28]See Defense Counsels' Notice Regarding Video Recording (filed ex parte and Under Seal), Docket Entry No. 120, p. 2; Danhach's Response, Docket Entry No. 155, p. 2.

[29]See Danhach's Response, Docket Entry No. 155, p. 3.

[30]See United States' Notice of Potential Conflict and Request for Hearing by the Court, Docket Entry No. 148, p. 2; Danhach's Response, Docket Entry No. 155, p. 4.

[31]See § 2255 Motion, Docket Entry No. 489, pp. 5-6.

Hennessy should not be disqualified.[32] Danhach argues that Hennessy was ineffective for not moving for a second _Garcia_ hearing after Danhach was formally charged with obstruction of justice in the Superseding Indictment.[33]

"During [a _Garcia_] hearing, the district court must ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." _Garcia-Jasso_, 472 F.3d at 243 (internal quotations and citations omitted). At the _Garcia_ hearing the court discussed with Danhach the possible problems involved, particularly if he were in fact charged with obstruction of justice for the concealment of the DVR hard drive.[34] The following dialogue occurred:

> Mr. Hennessy: . . . I have discussed the issue with my client. We have talked about going forward with trial and going forward perhaps with plea negotiations with the Government. I have told them what the Government's complaint about my involvement is, about my position with respect to this hard drive. And I can represent to the Court -- and the Court is free to discuss it with my client, as well -- he understands that potential. I've also expressed that I am not, in my view, a necessary witness at all in the matter. And Mr. Danhach has asked that I remain his counsel.

---

[32]_See_ Transcript of _Garcia_ Hearing ("_Garcia_ Hearing"), Docket Entry No. 365, pp. 20-21, 36, 39.

[33]_See_ § 2255 Motion, Docket Entry No. 489, pp. 6-8.

[34]_See_ _Garcia_ Hearing, Docket Entry No. 365, pp. 20-21.

-12-

The Court: Mr. Danhach, why don't you sit down by your lawyer. I want to ask you some questions.

You understand that the Government may present evidence either in this case or, if a Superseding Indictment is obtained, adding a charge of obstruction of justice against you. The Government may seek to put in evidence the involvement of Mr. Hennessy and people working for him in obtaining the hard drive secreted in the ceiling and having it tested and ultimately disclosed to the Government. You understand that?

Defendant Danhach: Yes, sir, I do.

The Court: And you understand that that evidence would not be favorable to you?

Defendant Danhach: I do understand that point.

The Court: Another lawyer representing you might conclude that there are grounds for challenging the chain of custody of the hard drive, challenging the integrity of the hard drive, challenging the integrity of the copy provided to the Government. The statements made by Mr. Hennessy indicate that no such argument will be made; you understand that?

Defendant Danhach: A hundred percent, and I agree with that, Your Honor.

The Court: Agree with what?

Defendant Danhach: That I would prefer Mr. Hennessy to be my attorney and there will be no arguments to be made as far as with another attorney or advising me that if he would have been my attorney, it would have been better or just to benefit me in case he's a witness.

The Court: Well, Mr. Hennessy is an excellent attorney, but there are other excellent attorneys you can obtain.

Defendant Danhach: I totally understand that, Your Honor.[35]

---

[35]See Garcia Hearing, Docket Entry No. 365, pp. 19-21.

The court concludes that Danhach's claims as to this alleged conflict of interest have no merit because he validly waived his right to conflict-free counsel at the <u>Garcia</u> hearing.

Assuming <u>arguendo</u> that Danhach did not waive his right, Danhach's claims still fail. When the nature of the alleged conflict does not result from multiple client representation, the Fifth Circuit applies the two-prong standard articulated in <u>Strickland</u>. <u>See</u> <u>United States v. Newell</u>, 315 F.3d 510, 516 (5th Cir. 2002) ("<u>Strickland</u> more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client.") (internal quotations and citations omitted). Hennessy's alleged conflict arose from the possibility that the prosecution would call him as a witness in Danhach's case to testify to the retrieval of the DVR hard drive. "A lawyer's need to testify for his client 'does not constitute a per se conflict of interest, but instead must be evaluated under the totality of the circumstances to determine whether an actual conflict exists between the interests of the lawyer and client.'" <u>Garcia-Jasso</u>, 472 F.3d at 244 (quoting <u>United States v. Martinez</u>, 151 F.3d 384, 393 (5th Cir. 1998)). "While it is a general rule in this circuit that a party's attorney should not be called as a witness unless his testimony is both necessary and unobtainable from other sources, it is also the case that where a lawyer's testimony does not actually incriminate his client, there is no

Sixth Amendment violation." <u>Martinez</u>, 151 F.3d at 393 (internal citations omitted).

There is no evidence that this possibility created a conflict of interest. Hennessy told the court that he was not a necessary witness and that "[t]here are other people there that can establish that this thing was where the pleadings say it was, there in the ceiling."[36] The record reflects that the United States learned about the concealment of the hard drive from Kheir during a proffer session conducted on September 13, 2012.[37] The United States had other means to prove the chain of custody of the hard drive, such as from the testimony of the investigator who accompanied Hennessy to the warehouse, the warehouse landlord who decided to remove the hard drive, the maintenance man who actually removed the hard drive, and representatives from the three companies who attempted to retrieve the relevant data from the hard drive. Hennessy's testimony was therefore unnecessary, and the government would not have been able to call Hennessy as a witness because his testimony was neither "necessary" nor "unobtainable from other sources." <u>Martinez</u>, 151 F.3d at 493.

Hennessy therefore had no reason to fear that his own testimony might subject him to criminal liability. <u>See</u> <u>Garcia-Jasso</u>, 472 F.3d at 244-45 (reasoning that the attorney did not act

---

[36] <u>See</u> <u>Garcia</u> Hearing, Docket Entry No. 365, pp. 19-20, 23.

[37] <u>See</u> United States' Notice of Potential Conflict and Request for Hearing by the Court, Docket Entry No. 148, p. 2.

under a conflict of interest because "there is no evidence that [the attorney] would have had reason to fear that his own testimony might subject him to criminal liability"). After the court denied the United States' Motion to Reconsider Request for Disqualification, the court stated "[i]f you are going to subpoena Mr. Hennessy for a trial witness, we need to have this issue briefed well in advance. So you will file by January 11th your subpoena to Mr. Hennessy with any duces tecum attached, . . . ."[38] The United States never subpoenaed Hennessy. Danhach makes the conclusory claim that Hennessy was potentially criminally liable for obstruction of justice based on the retrieval of the hard drive.[39] But Danhach's contentions "rely on speculation and inferences that are unsupported by the record." Garcia-Jasso, 472 F.3d at 245. Danhach has therefore not shown an actual conflict of interest to satisfy the first prong of Strickland.

While either prong of Strickland is dispositive, 104 S. Ct. at 2069, Danhach has also failed to show prejudice. Danhach claims he was prejudiced by Hennessy's alleged conflict because Hennessy agreed to stipulate to the authenticity and chain of custody of the hard drive to avoid testifying.[40] But because the prosecution had other available witnesses to testify about those matters, the

---

[38]See Transcript of Motion Hearing, Docket Entry No. 362, pp. 19-20.

[39]See § 2255 Motion, Docket Entry No. 489, p. 5.

[40]Id. at 6.

-16-

stipulation did not enable the prosecution to prove anything it could not otherwise have proved. These conflict of interest claims will be denied because Danhach waived the conflict and because he has not met either of the requirements of <u>Strickland</u>.

b.    Claims 4 and 5

Danhach claims that Hennessy was ineffective for agreeing to the stipulation about the hard drive and for failing to challenge the authenticity and chain of custody of the hard drive.[41]    The purpose of the stipulation was to set out the facts surrounding the recovery of the hard drive.[42]    Because the prosecution could prove those facts through several other known and available witnesses, Hennessy strategically agreed to stipulate to them.[43]    The authenticity of the DVR hard drive was readily apparent—it shows Danhach, Kheir, and their employees in the warehouse conducting activities in furtherance of the charged conspiracy.[44]    "Because failure to make a frivolous objection does not cause counsel's

_____

[41]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 11-15.  Danhach also claimed that appellate counsel, Yolanda E. Jarmon, was ineffective for failing to challenge the authenticity and chain of custody of the hard drive, but he only mentions Jarmon in one sentence without elaboration.  <u>Id.</u> at 15.  His claims against Jarmon are patently without merit so the court will only discuss claims against Hennessy.

[42]<u>See</u> Agreed Stipulation, Docket Entry No. 256, p. 1.

[43]<u>See</u> Hennessy Declaration, Docket Entry No. 497, p. 8.

[44]<u>See</u> Trial Transcript, Feb. 28, 2013, Docket Entry No. 376, pp. 56, 66-68.

performance to fall below an objective level of reasonableness,"
Danhach cannot show how Hennessy was deficient.  See Green v.
Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).  An objection to the
chain of custody would have been frivolous because the prosecution
had ample means to prove it up.  Because Danhach has not shown that
Hennessy was deficient or that Danhach has been prejudiced, these
claims will be denied.

     c.    Claim 3

Danhach argues that Hennessy was ineffective for not summoning
a second translator to translate the phone calls between himself
and Kheir, and for failing to introduce and translate all the calls
made between Danhach and Kheir that day.[45]  Danhach refers to "a
phone call that was placed in between the two phone calls the
government relied upon" in which he allegedly told Kheir not to
interfere with the investigation.[46]  He elaborates in his Reply that
but for Hennessy's ineffective assistance the jury would have heard
"all the phone calls demonstrating by clear and convincing evidence
,the petitioner telling Kheir not to touch anything, nor hide
anuthing [sic]."[47]  He alleges that the jury would not have found
him guilty of obstruction of justice if the two incriminating phone
calls were "viewed in light of all the surrounding phone calls."[48]

---

[45]See § 2255 Motion, Docket Entry No. 489, pp. 8-11.

[46]Id. at 10.

[47]See Defendant's Reply, Docket Entry No. 506, p. 16.

[48]Id. at 16.

Danhach contends that the calls should have been produced under Brady v. Maryland, 83 S. Ct. 1194 (1963), and that Hennessy did not seek to obtain them.[49] Danhach asks for an evidentiary hearing and that the government produce the calls as required exculpatory evidence.[50]

In his Sworn Declaration Danhach does not state that a separate, exculpatory phone call occurred.[51] Instead, he states that "Defense attorney, Mr. Hennessy, did not summons nor subpoena a translator to adequately translate the phone calls between Defendant and Codefendant."[52] In his Reply Danhach argues for the first time that he told Hennessy about the allegedly missing phone calls.[53]

As an initial matter, Danhach cannot demonstrate a violation of the Supreme Court's decision in Brady, which held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

---

[49]See § 2255 Motion, Docket Entry No. 489, p. 11; Defendant's Reply, Docket Entry No. 506, p. 15.

[50]See § 2255 Motion, Docket Entry No. 489, p. 11; Defendant's Reply, Docket Entry No. 506, pp. 17-18.

[51]Sworn Declaration of Sameh K. Danhach ("Danhach Declaration"), attached to § 2255 Motion, Docket Entry No. 489, pp. 25-27.

[52]See Danhach Declaration, attached to § 2255 Motion, Docket Entry No. 489, p. 25.

[53]See Defendant's Reply, Docket Entry No. 506, p. 15.

either to guilt or to punishment[.]" 83 S. Ct. at 1196-97. "Brady claims involve 'the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense.'" West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996) (quoting United States v. Agurs, 96 S. Ct. 2392, 2397 (1976)). Evidence is not suppressed for purposes of Brady if "'the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.'" Id. at 1399 (quoting Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994)). Because Danhach knew of the allegedly missing phone call and alleges that he told Hennessy about the call, he cannot show that this evidence was suppressed by the government and therefore has not alleged a violation of Brady.

Moreover, Hennessy worked extensively to elicit the most favorable evidence regarding these jail calls. First, he filed a Motion *In Limine* seeking to exclude speculative testimony regarding the meaning of the calls,[54] which was denied.[55] Second, at trial Hennessy introduced calls between Danhach and Mohammed Mokbel that were made the same day as the two incriminating calls to place the calls in context and to suggest to the jury that Danhach was concerned about hiding a gun, not the hard drive.[56] Hennessy's

---

[54]See Danhach's Fourth Motion *In Limine*——Speculation Regarding Meaning of Phone Conversation, Docket Entry No. 221, p. 1.

[55]See Order, Docket Entry No. 241, p. 1.

[56]See Trial Transcript, Feb. 27, 2013, Docket Entry No. 381, pp. 218-25.

efforts and strategy are reflected in the record and the "mere possibility of a different outcome" is not sufficient to prevail on Strickland's prejudice requirement. Lamb, 179 F.3d at 360. The evidence supported Danhach's conviction for aiding and abetting obstruction of justice.[57] Given Danhach's statements to Kheir in the first call to "remove it," "put them far apart from each other," and referencing an "attic,"[58] and given that the hard drive was placed in the attic/ceiling of Danhach's warehouse the same day the call occurred,[59] the court concludes that there is no reasonable probability of a different outcome if Hennessy had retained a second translator. See id. The Fifth Circuit also stated that the jury "reasonably could have convicted Danhach of obstruction of justice based on Kheir's concealment of a Gucci bag, which Kheir retrieved from Danhach's residence on the day of Danhach's arrest, and which contained ledgers detailing illicit transactions."[60] Danach, 815 F.3d at 237. For this additional reason the court concludes that there is no reasonable probability of a different outcome.

To the extent Danhach claims that Hennessy should have retained a second translator to adequately translate the calls from

---

[57]See Per Curiam, Docket Entry No. 484, pp. 10-11.

[58]See Trial Transcript, Feb. 27, 2013, Docket Entry No. 381, pp. 209-10.

[59]See Agreed Stipulation, Docket Entry No. 256, p. 1.

[60]See Per Curiam, Docket Entry No. 484, p. 11.

Arabic to English, this claim also fails. The record establishes that the translator was qualified to translate the calls, her translation was reviewed by another FBI translator,[61] and when Hennessy reviewed the transcripts with Danhach, he generally agreed that the translation was correct.[62] Hennessy explained that "[i]nstead of mounting a challenge to the literal translation, I chose to place the calls with Mr. Kheir in context with other calls that Mr. Danhach made on March 1, 2012."[63] In his Reply Danhach admits "[t]he issue at hand is not whether the F.B.I. correctly translated that Arabic into English."[64]

Moreover, to prevail on an ineffective assistance claim based on counsel's failure to call another translator as a witness, Danhach must identify the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). Because Danhach has not met these requirements, no deficient performance or prejudice has been shown and this claim will be denied.

_____

[61]See Trial Transcript, Feb. 27, 2013, Docket Entry No. 381, pp. 201-03, 205.

[62]See Hennessy Declaration, Docket Entry No. 497, p. 5.

[63]Id. at 6.

[64]See Defendant's Reply, Docket Entry No. 506, p. 15.

2. <u>Mokbel Conflict: Claim 7</u>

Danhach argues that Hennessy was deficient because he had a direct conflict of interest from previously representing Mohammed Mokbel, "who is the person that the government wanted Petitioner to testify or debrief on and also the person who Petitioner worked for."[65]

Because this alleged conflict arises from multiple representation of defendants, the issue is evaluated under <u>Cuyler v. Sullivan</u>, 100 S. Ct. 1708, 1718 (1980). <u>See</u> <u>Hernandez v. Johnson</u>, 108 F.3d 554, 559 (5th Cir. 1997). Danhach must show that an actual conflict of interest adversely affected his lawyer's performance. <u>United States v. Scruggs</u>, 691 F.3d 660, 670 (5th Cir. 2012). But "[t]he defendant need not show prejudice in the sense that the outcome of the proceeding would have been different absent the conflict because prejudice is presumed upon a showing of an actual conflict that adversely affected representation." <u>United States v. Culverhouse</u>, 507 F.3d 888, 892 (5th Cir. 2007). Multiple representation does not automatically create an actual conflict of interest—the defendant must show something "more than a speculative or potential conflict" such that the "clients' interests diverge and [the attorney] must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty." <u>Id.</u> at 892-93. Factors relevant to determining

---

[65]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 17-18.

whether a disqualifying conflict exists include "(1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated." United States v. Burns, 526 F.3d 852, 856 (5th Cir. 2008). The burden is on Danhach to show adverse effect "with evidence that 'some plausible alternative defense strategy or tactic' could have been pursued, but was not because of the actual conflict impairing counsel's performance." Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000). The Fifth Circuit has applied Cuyler to cases of successive representation in addition to simultaneous representation. United States v. Infante, 404 F.3d 376, 391 n.12 (5th Cir. 2005).

In this case a witness at trial, Mohammed Zainaldin, testified that he was serving a federal sentence for conspiracy to transport stolen OTC merchandise, baby formula, and other items he acquired from boosters between 2008 and 2011.[66] He also testified that he partnered with Mohammed Mokbel in 2008 who was involved in the same business of buying and selling OTC medication.[67] Mokbel moved to California to conduct part of the operation there while Zainaldin

---

[66]See Trial Transcript, Feb. 28, 2013, Docket Entry No. 376, pp. 7-10.

[67]Id. at 26-27.

ran the Texas division.[68]  Hennessy detailed his representation of Mokbel in his affidavit:

> I represented Mohammed Mokbel in connection with a federal investigation in Houston in the late 1990s.  My representation of Mr. Mokbel ended when he was charged in a federal indictment in 1999 in a case styled *United States v. Hanafy, et al.*, 99-CR-041 in the United States District Court for the Northern District of Texas, Dallas Division.  After he was charged in that case, Mr. Mokbel hired Frank Jackson, a Dallas lawyer, to represent him.  Mr. Mokbel was ultimately acquitted in the matter.
>
> I have not represented Mr. Mokbel since he hired Mr. Jackson in the Dallas case.  Mr. Mokbel has, however, referred clients to me from time to time.  Mr. Danhach was one of those referrals.  My prior representation of Mr. Mokbel in the late 1990s presented no conflict in my representation of Mr. Danhach.[69]

Danhach has not shown that Hennessy had any confidential information that is helpful to one client but hurtful to the other. There was no evidence that Danhach worked with Mokbel in the late 1990s.  Hennessy's representation of Mokbel had been terminated for approximately 13 years before Hennessy entered an appearance for Danhach on February 27, 2012.  Because Hennessy did not have divided loyalties and because there was no actual conflict between Danhach and Mokbel, Danhach cannot obtain relief for this claim. Assuming arguendo that there were such a conflict, Danhach has failed to show the required "adverse effect" because he has not shown that an alternative strategy existed that Hennessy did not pursue because of the conflict.  Therefore, Danhach has not stated

_____

[68]Id. at 27.

[69]See Hennessy Declaration, Docket Entry No. 497, p. 8.

-25-

any facts to support his claim that Hennessy had an actual conflict of interest.

### 3. Failure to Call Impeaching or Exculpatory Witnesses: Claims 10 and 13

To prevail on an ineffective assistance claim based on counsel's failure to call a witness, Danhach must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. <u>Day</u>, 566 F.3d at 538.

#### a. Claim 10

Danhach claims that Hennessy was ineffective for failing to call impeaching or exculpatory witnesses in connection with a box of stolen OTC items.[70] The interstate shipment of this box was the subject of count two of the Superseding Indictment.[71] Danhach alleges that there was no evidence to connect him to the shipment of the box, and that Hennessy should have objected for lack of evidence.[72] Danhach also argues that Hennessy should have called Agent Arceola whom he claims "had first hand knowledge of the amount of goods that was in the box, some $5,904.49."[73] The

---

[70]<u>See</u> § 2255 Motion, Docket Entry No. 489, p. 19.

[71]<u>See</u> Superseding Indictment, Docket Entry No. 169, pp. 7-8.

[72]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 19-20.

[73]<u>Id.</u> at 20.

evidence at trial revealed that Kheir attempted to pick up the box from FedEx and that the box contained various OTC products and a handwritten booster list.[74]

Danhach does not meet the requirements of an ineffective assistance claim based on counsel's failure to call a witness. He names Agent Arceola as an uncalled witness, but does not articulate that Agent Arceola was available to testify, or that the testimony would have been favorable to his defense. Danhach argues that Agent Arceola would have testified to the value of goods in the box, "some $5,903.49."[75] But this testimony would not have changed the outcome because count two of the Superseding Indictment charges Danhach with the interstate transportation of stolen goods "with a value of $5,000 or more."[76] Danhach's claim that there was no evidence to connect him to the shipment of the box also lacks merit. There was ample evidence for the jury to find Danhach guilty of count two, and the Fifth Circuit found the evidence sufficient to support Danhach's conviction.[77] Danhach, 815 F.3d at 239. This claim will therefore be denied.

b.   Claim 13

Danhach claims that Hennessy was ineffective for failing to call favorable witnesses to demonstrate that Danhach had purchased

---

[74]See Trial Transcript, Feb. 26, 2013, Docket Entry No. 375, pp. 181-84, 201-02

[75]See § 2255 Motion, Docket Entry No. 489, p. 20.

[76]See Superseding Indictment, Docket Entry No. 169, pp. 7-8.

[77]See Per Curiam, Docket Entry No. 484, p. 12.

some merchandise legitimately.[78]   Danhach argues that Hennessy should have called "a Western Union Representative to testify on the amount of money that Petitioner, on a regular basis, sent to China representatives for purchases of goods...List of witnesses that were not called: Mich RX-China Companies; Hairsalons-Armstrong McCall; Mario AdduColt; The girls (ofc. X change)."[79]   Hennessy explained that he attempted to locate favorable witnesses, but was unable to do so.[80]   Because Danhach only provides conclusory allegations to support this claim, he has not shown that Hennessy was ineffective.   Moreover, given the weight of the evidence against him, Danhach has not shown that he was prejudiced by the failure to call such witnesses.

    4.   <u>Failure to Object to 2008 Wal-Mart Arrest:   Claim 11</u>

Danhach claims that Hennessy was ineffective "for depriving [him] the opportunity to exclude a previous Wal-Mart arrest dated in 2008, from the record there was absolutely no link that ties the Wal-Mart case, which was dismissed[,] to the instant conspiracy count."[81]   Contrary to Danhach's allegation, Hennessy repeatedly attempted to limit or exclude this evidence.   On August 3, 2012, Hennessy filed a motion for pretrial notice of Rule 404(b)

---

[78]<u>See</u> § 2255 Motion, Docket Entry No. 489, pp. 21-22.

[79]<u>Id.</u> at 22.

[80]<u>See</u> Hennessy Declaration, Docket Entry No. 497, p. 9.

[81]<u>See</u> § 2255 Motion, Docket Entry No. 489, p. 21.

evidence.[82] On September 10, 2012, Hennessy filed a First Motion *In Limine* seeking to exclude or limit evidence relating to, <u>inter alia</u>, any Wal-Mart theft charges that were filed in Harris County in 2008, and seeking to require the government to approach the bench prior to offering such evidence.[83] On February 25, 2013, the first day of trial, Hennessy filed a Sixth Motion *In Limine* seeking to exclude portions of Sergeant Neil Hines' expected testimony, specifically involving the content of "numerous documents that were found in Danhach's car after his arrest in 2008."[84] During trial, before Terry Smith testified, Hennessy objected to his testimony about Danhach's involvement in the 2008 arrest.[85] The court allowed Smith to testify, and Hennessy objected repeatedly to his testimony on direct examination for hearsay and lack of personal knowledge about the 2008 arrest.[86] Hennessy objected to witness testimony identifying Danhach in nine videos in which he would enter a Wal-Mart, pick up multiple boxes of an OTC medication, present a similar box to the cashier with an incorrect Universal Product Code

---

[82]<u>See</u> Defendant's Request for Rule 404 Notice, Docket Entry No. 97.

[83]<u>See</u> Danhach's First Motion *In Limine*, Docket Entry No. 133, pp. 2-3.

[84]<u>See</u> Danhach's Sixth Motion *In Limine*——Sgt. Neil Hines' Testimony, Docket Entry No. 250, p. 1.

[85]<u>See</u> Trial Transcript, Feb. 25, 2013, Docket Entry No. 378, pp. 79-80.

[86]<u>Id.</u> at 87-91.

("UPC") that would ring up a lower price, and tell the cashier he had multiple boxes of that product, or that he had fewer boxes than he actually did.[87] The videos show that on May 6, 2008, Danhach and Kheir went to a Wal-Mart, placed stickers with fake UPCs on packages of Zyrtec and razors, and were arrested.[88] Sergeant Hines and another local law enforcement officer testified about Danhach's and Kheir's arrest that day.[89] Hennessy presented evidence that the case had been dismissed.[90]

Although Hennessy vigorously attempted to exclude evidence related to the 2008 arrest, the court properly admitted the evidence at trial. In proving a conspiracy, the prosecution may show other acts occurring during the life of the conspiracy as intrinsic evidence. United States v. Watkins, 591 F.3d 780, 785-86 (5th Cir. 2009). The Superseding Indictment specified that the charged conspiracy began in April of 2008 and that the May 6, 2008, arrest was an overt act by the conspirators.[91] Because Hennessy attempted to exclude the evidence and the evidence was rightfully admitted, Danhach has not shown that Hennessy was ineffective.

---

[87]Id. at 92-96.

[88]Id. at 97-101.

[89]See Trial Transcript, Feb. 26, 2013, Docket Entry No. 375, pp. 151-68.

[90]Id. at 50-52.

[91]See Superseding Indictment, Docket Entry No. 169, pp. 2, 5.

5. <u>Failure to Request a Speedy Trial: Claim 12</u>

Danhach claims that Hennessy was deficient because he failed to request a speedy trial.[92] Danhach alleges that he asked Hennessy to request a speedy trial during several recorded jail phone conversations, and that Hennessy "misled his client and lied to him, denying him his privedges [sic] to of enjoyed his 6th Amendment Right to a speedy trial."[93] Danhach appears to raise only a Sixth Amendment right to a speedy trial, not a right under the Speedy Trial Act. In his affidavit, Hennessy states:

> Mr. Danhach never asked me to request a speedy trial, and I did not believe that a speedy trial was in his best interest. From very early on, I believed that the best course of action was to enter into a plea agreement with the government that included cooperation. We never reached an agreement with the government that was acceptable to Mr. Danhach, and I needed as much time as possible to prepare to defend the case.[94]

Danhach challenges every aspect of Hennessy's statement.[95] He argues that once Hennessy could not reach a plea agreement with the government he should have filed a motion for a speedy trial.[96] Danhach alleges that Hennessy caused him "grave prejudice" but does not otherwise articulate how he was prejudiced.[97]

---

[92]<u>See</u> § 2255 Motion, Docket Entry No. 489, p. 21.

[93]<u>See</u> Defendant's Reply, Docket Entry No. 506, p. 28.

[94]<u>See</u> Hennessy Declaration, Docket Entry No. 497, p. 10.

[95]<u>See</u> Defendant's Reply, Docket Entry No. 506, p. 29.

[96]<u>Id.</u>

[97]<u>Id.</u>

A criminal defendant has a constitutional and statutory right to a speedy trial. 18 U.S.C. § 3161; Barker v. Wingo, 92 S. Ct. 2182, 2191-93 (1972). The factors a court should consider in determining whether a Sixth Amendment speedy trial violation has occurred are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Id. at 2192. Danhach was arrested on February 27, 2012, and retained in custody pending trial.[98] His trial began on February 25, 2013.[99] Hennessy's Declaration states that a delay was necessary to prepare for trial.[100] This was a complex conspiracy case that involved multiple criminal activities: The original indictment included four counts (Docket Entry No. 15) and was superseded to add two more counts (Docket Entry No. 169).

The evidence shows that Hennessy repeatedly objected to continuances and asked the court for an earlier trial date. On August 31, 2012, the government filed a Motion for Continuance and Motion to Designate as a Complex Case (Docket Entry No. 116). On September 6, 2012, Hennessy filed a Response [in opposition] to the Government's Motion for Continuance (Docket Entry No. 121). On September 14, 2012, during a scheduling conference Hennessy told the government and the court that "[w]e would like a trial setting

---

[98]See Courtroom Minutes, Docket Entry No. 4, p. 1.

[99]See Trial Transcript, Feb. 25, 2013, Docket Entry No. 378.

[100]See Hennessy Declaration, Docket Entry No. 497, p. 10.

as soon as possible."[101]  On November 16, 2012, during a motion

hearing discussing pending motions to continue Hennessy told the

court:

> The Court correctly perceives that I am concerned about
> going to trial.  However, my client has been in custody
> and is pressing for a trial date as soon as he can get
> it; and on account of that, I am obliged to seek such a
> trial date from the Court.[102]

The court responded:

> I find pursuant to Title 18, United States Code,
> Section 31(7)(b)(i)(I) that because of the complexity of
> this case, in particular the conspiracy count dealing
> with obstruction of justice, which deal with somewhat
> novelly questions of fact and law, that it would be
> unreasonable to expect adequate preparation for pretrial
> proceedings or a trial by November 26th.
>
> Alternatively, I find pursuant to 18, USC Section
> 3161(7)(b)(i)(v) that even if the case is not unusual or
> complex so as to fall within Clause 2 that it would
> nevertheless interfere with counsel for Kheir's trial
> preparation and preventing from having reasonable time to
> effectively prepare were a continuance not granted.
>
> And I find that even if defendant D[a]nhach opposes
> continuance -- and I find his opposition is somewhat
> tepid -- that a reasonable delay is nevertheless
> warranted by 18, USC Section 3161(6) because the
> defendant is joined for trial with the co-defendant as to
> whom no motion for severance has been granted.  That's
> 3161(h)(6) and 3171(h)(7)(b)(i) and 4.  So the motion for
> continuance is granted.[103]

On February 8, 2013, the court considered the government's

opposed motion for continuance for a separate criminal case against

---

[101]See Scheduling Conference / Motion Hearing Transcript,
Sept. 14, 2012, Docket Entry No. 142, p. 21.

[102]See Motion Hearing Transcript, Nov. 16, 2012, Docket Entry
No. 362, p. 5.

[103]Id. at 6.

Danhach (Docket Entry No. 20 in Criminal Action No. 12-770).[104]   In discussing dates for both Criminal Action No. 12-770 and the underlying case, Criminal Action No. 12-161, Hennessy stated "[o]f course, you understand, Judge, I do object to any continuance of the case --."[105]

The record reflects that Hennessy repeatedly attempted to move up the trial date, objected to continuances, and never filed a motion to continue the case.  Danhach has therefore failed to show any deficient performance by Hennessy.  Moreover, Danhach has not explained how he was prejudiced by the delay or shown a substantial likelihood that a speedy trial motion would have benefitted him. Danhach is therefore not entitled to relief on this claim.

### 6.   Failure to Negotiate a Plea Agreement:   Claim 8

Danhach alleges that "counsel was ineffective for failing to secure a Plea Deal.  Petitioner sought for a plea, but attorney never mitigated any consessions [sic] nor contentions. . . . Petitioner fell under his attorney's guise and was instructed by Mr. Hennessy to go to trial."[106]   In his Declaration Hennessy outlined his attempts to negotiate an agreement that Danhach would approve of (including soliciting the advice of another attorney who

---

[104]See Hearing Transcript, Feb. 8, 2013, Docket Entry No. 357, pp. 29-30.

[105]Id. at 30.

[106]See § 2255 Motion, Docket Entry No. 489, p. 18.

secured agreements similar to what Danhach wanted), his discussions with Danhach during the various phases of negotiations, and Danhach's ultimate refusal to accept a plea offer.[107] Hennessy explained that the government was unwilling to agree to the terms Danhach sought——a guarantee that he would not be deported and a guarantee of a particular sentence.[108]

The record reflects Hennessy's attempts to negotiate a plea agreement with the government and Danhach's refusal of a plea agreement acceptable to the government. On September 25, 2012, Hennessy stated that he and the government discussed "going forward perhaps with plea negotiations."[109] On February 25, 2013, before the trial began, the court ensured that Danhach understood the latest plea offer and that he knowingly rejected it.[110]

> THE COURT: It is my practice before we pick a jury to have the Government state on the record the last plea offer, if there was one, and have the defendant to acknowledge that he was aware of it and chose on his volition not to accept it. I do this to avoid any argument later on 2255 that the defendant would have pled if he had known the offer. Did the Government make any offers?
>
> MR. SMITH: The last offer that Mr. Hennessy and I discussed, that my office did not agree with, was a plea to one count, Count 1 of the conspiracy in this case.

---

[107]See Hennessy Declaration, Docket Entry No. 497, pp. 4-5.

[108]Id.

[109]See Garcia Hearing, Docket Entry No. 365, p. 19.

[110]See Trial Transcript, Feb. 25, 2013, Docket Entry No. 378, pp. 5-6.

> However, the Government entertained early on in our
> negotiations, and up at to least a month ago, a plea to
> conspiracy and a substantive count in the indictment, and
> Mr. Danhach refused.
>
> THE COURT: I don't understand what you are saying. What
> was the offer as of Friday, or the offer that is now
> outstanding, if there is one?
>
> MR. SMITH: Plea to Count 1 and a substantive Count 2 or
> 3 in the indictment.
>
> THE COURT: Was that communicated to you, Mr. Danhach?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is that your choice not to accept that?
>
> THE DEFENDANT: Yes, Your Honor.[111]

When a defendant's allegations in a § 2255 motion contradict his
sworn testimony in court, he must do more than merely contradict
his statements with conclusory allegations. Id. Hennessy's sworn
Declaration and the trial transcript show that Danhach rejected the
government's plea offer and chose to proceed to trial. Danhach has
only provided conclusory allegations that are contradicted by the
record and has not shown that Hennessy's performance was deficient.
The Fifth Circuit has explained the burden Danhach faces to show
that he was prejudiced by going to trial instead of pleading
guilty.

> As to prejudice, when a defendant alleges that counsel's
> deficient performance caused him to reject a plea offer,
> he
>
>> must show that but for the ineffective advice
>> of counsel there is a reasonable probability

---

[111]Id.

> that the plea offer would have been presented
> to the court (i.e. that the defendant would
> have accepted the plea and the prosecution
> would not have withdrawn it in light of
> intervening circumstances), that the court
> would have accepted its terms, and that the
> conviction or sentence, or both, under the
> offer's terms would have been less severe than
> under the judgment and sentence that in fact
> were imposed.

United States v. Reed, 719 F.3d 369, 373 (5th Cir. 2013) (internal quotations and citations omitted). Danhach has not shown that Hennessy's deficient performance prevented him from accepting any plea that was acceptable to the government. Because Danhach has not satisfied either requirement of the Strickland test, he is not entitled to relief on this claim.

### 7. Advising a False Maximum Punishment: Claim 9

Danhach claims "Counsel was ineffective for making a promise to his client and making him believe that the maximum amount that he would receive was a 5 year sentence for conspiracy. . . . [and] by not providing the Petitioner with professional legal advice regarding the potential risk of a much harsher sentence."[112] Hennessy states that:

> [B]oth the magistrate judge and I informed Mr. Danhach
> that the maximum possible punishment for Count One of the
> superseding indictment was five years' imprisonment and
> a $250,000 fine; the maximum possible punishment for
> Counts Two, Three and Four was ten years' imprisonment
> and a $250,000 fine; and the maximum possible punishment
> for Counts Five and Six was twenty years' imprisonment
> and a $250,000 fine. He was also informed that the

---

[112]See § 2255 Motion, Docket Entry No. 489, p. 19.

maximum term of supervised release for each count was three years, and that each count carried a possible special assessment of $100.[113]

The arraignment transcript supports Hennessy's Declaration and shows that Magistrate Judge Johnson correctly advised Danhach as to the maximum term of imprisonment applicable to each count of the Superseding Indictment.[114] Danhach stated that he understood the charges and entered a plea of not guilty.[115]

Danhach has provided conclusory allegations that contradict the record, but no other evidence to establish Hennessy's deficient performance. Nor has Danhach established how he was prejudiced by any wrong advice since he was correctly informed of the maximum possible sentences, and he stated that he understood them. This claim will therefore be denied.

8. <u>Failure to Object to Presentence Report: Claims 6 and 14</u>

a. Claim 6

Danhach claims that Hennessy and his appellate counsel, Yolanda Jarmon, were ineffective "for failing to request an evidentiary hearing" as to the loss amount and for failing to object to the court's calculation of the loss amount.[116] Pursuant

---

[113]<u>See</u> Hennessy Declaration, Docket Entry No. 497, p. 4.

[114]<u>See</u> Arraignment Transcript, Oct. 26, 2012, Docket Entry No. 369, pp. 3-4.

[115]<u>Id.</u> at 4-5.

[116]<u>See</u> § 2255 Motion, Docket Entry No. 489, p. 16. The court will only analyze these claims as to Hennessy because Danhach has
(continued...)

to the United States Sentencing Guideline § 2B1.1(b)(1)(J) the Probation Office recommended an 18-level increase in Danhach's offense level based on a loss amount of $2,931,057.30.[117] Danhach alleges that this 18-level sentencing enhancement "was not supported by facts," and that Hennessy did not object to the "erroneous" PSR.[118] Danhach argues that the PSR based its conclusion on the unsupported assumption that all of Danhach's goods were stolen, and that the enhancement would not have been imposed had Hennessy introduced into evidence "the receipts and invoices of purchases" attached as Exhibit A to his Motion.[119] In Danhach's Declaration he states "Purchase Orders reflect a difference . . . of $394,506.00, making the amount listed on the Business Record an incorrect amount. It should be $2,536,551.00" rather than $2,931,057.30 as calculated by the Probation Office.[120] In its Response the government argues that "a loss amount of $2,536,551.00 would still qualify Danhach for the 18-level enhancement, which

---

[116](...continued)
not demonstrated how Jarmon could have requested an evidentiary hearing on the loss issue when she did not enter a notice of appearance until after sentencing had concluded and the appellate process had begun, and because Jarmon did contest the calculation of the loss amount on appeal. See United States v. Danhach, Docket Entry No. 484, p. 12.

[117]See PSR, Docket Entry No. 330, p. 25.

[118]See § 2255 Motion, Docket Entry No. 489, p. 16.

[119]Id. at 16-17.

[120]Danhach Declaration, attached to § 2255 Motion, Docket Entry No. 489, p. 27.

applies to a loss amount of 'more than $2,500,000.'"[121]  In his Reply Danhach provides a new method of calculation that calculates a loss amount of $2,232,003, which would result in a 16-level increase.[122]

Contrary to Danhach's assertions, the record confirms that Hennessy objected to the PSR in general and to the 18-level enhancement for the loss amount specifically.  On May 15, 2014, Hennessy filed a sentencing memorandum arguing that the evidence used was unreliable and insufficient, and that the loss amount used to calculate the 18-level enhancement was speculative, arbitrary, and based on unjustified assumptions that the goods were stolen.[123] At the sentencing hearing the court ruled on the objection to the loss amount:  "That objection is also denied.  The probation officer performed a very thorough analysis of the intended loss attributable to the defendant, and the Court concludes that the probation officer's finding of loss amount is supported by reliable evidence."[124]

On appeal the Fifth Circuit affirmed the 18-level increase based on the loss amount of $2,931,057.30.  It reasoned that

---

[121]See United States' Response, Docket Entry No. 504, p. 71.

[122]See Petitioner's Reply, Docket Entry No. 506, pp. 21-22.

[123]See Objections the Pre-Sentence Report, Docket Entry No. 329, pp. 1-3.

[124]See Sentencing Transcript, May 22, 2014, Docket Entry No. 360, p. 3.

> A district court may rely upon information in the
> PSR in making its loss-amount estimate, so long as that
> "information bears some indicia of reliability."
> United States v. Simpson, 741 F.3d 539, 557 (5th Cir.
> 2014). And if a defendant challenges the PSR, he "bears
> the burden of presenting rebuttal evidence to demonstrate
> that the information in the PSR is inaccurate or
> materially untrue." Id. Danhach has not met that
> burden. As he did below, Danhach contends that the PSR's
> methodology is "speculative and arbitrary." He also
> criticizes the PSR's conclusion that all of the business
> dealings recorded in the ledgers involved stolen goods.
> But he points to no evidence that any transaction was
> legitimate, or to any other evidence that rebuts the PSR
> on the loss amount. Accordingly, his challenge on this
> issue fails.[125]

Danhach, 815 F.3d at 238. That determination is binding on this
court as law of the case and may not be re-litigated. See
United States v. Smith, 814 F.3d 268, 273 (5th Cir. 2016) ("The
law-of-the-case doctrine bars reexamination of issues of law or
fact decided on appeal in subsequent proceedings in a trial or
appellate court.") (citation omitted). Danhach points to no
evidence that any transaction was legitimate and provides the court
only with a different method of calculating the loss amount.
Hennessy objected to the PSR and strategically did not request an
evidentiary hearing.[126] Danhach has not shown that an evidentiary
hearing would have changed the outcome. Therefore, his claim for
ineffective assistance of counsel will be denied because Danhach
has not satisfied either requirement of the Strickland test.

---

[125]See Per Curiam, Docket Entry No. 484, p. 12.

[126]See Hennessy Declaration, Docket Entry No. 497, p. 10.

-41-

b.    Claim 14

Danhach contends that Hennessy was deficient for failing to object to the 4-level sentence enhancement based on his leadership role.[127]  He argues that he was "not the creator nor Leader of any operation, but rather was employed by Mr. Mohammed Mokbels."[128]  In support he points to Mr. Zainaldin's testimony at trial that Danhach worked for Mokbel.[129]  Hennessy explains in his affidavit:

> The issue at trial was not whether Mr. Danhach ran a business that involved managing several people; the issue was whether his business was criminal.  The evidence clearly demonstrated that Mr. Danhach organized and led more than five people in the operation of his business. I believed that an objection to Mr. Danhach's leadership status under the guidelines was meritless.[130]

The United States Sentencing Guidelines state "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  U.S.S.G § 3B1.1(a).  It also provides factors for the court to consider including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

---

[127]See § 2255 Motion, Docket Entry No. 489, pp. 22-23.

[128]Id. at 22.

[129]See Defendant's Reply, Docket Entry No. 506, p. 25.

[130]See Hennessy Declaration, Docket Entry No. 497, p. 10.

-42-

_Id._ at cmt. 4. The Guidelines emphasize that there can "be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." _Id._ The evidence at trial established that Danhach was a known fence for OTC medication,[131] he rented a warehouse for the activities,[132] recruited and organized the activities of numerous boosters and workers for his warehouse,[133] rented cars for them,[134] bought stolen products from boosters,[135] and paid the boosters in cash.[136] Even if Danhach was working for Mokbel, he was clearly a leader or organizer in the conspiracy. Danhach has not demonstrated that Hennessy's performance was deficient, and he has not established that the court would not have applied the 4-level enhancement if Hennessy had objected to it.

## C.  Conclusion

Despite the efforts of his exceptional trial attorney, Danhach was found guilty because he was in fact guilty, not because of any

---

[131]See, e.g., Trial Transcript, Feb. 28, 2013, Docket Entry No. 376, p. 10.

[132]See, e.g., Trial Transcript, Feb. 26, 2013, Docket Entry No. 375, pp. 16-17.

[133]See, e.g., Trial Transcript, Feb. 27, 2013, Docket Entry No. 381, pp. 57-60.

[134]See, e.g., Trial Transcript, Feb. 26, 2013, Docket Entry No. 375, pp. 125-26.

[135]See id. at 123.

[136]Id.

deficiency in Hennessy's performance. Because Danhach has not established a valid claim for relief, his § 2255 Motion will be denied.

## IV. <u>Certificate of Appealability</u>

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that

they "would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, <u>sua sponte</u>, without requiring further briefing or argument. <u>See Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because Danhach does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will be denied.

### V.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.  The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and Correct Sentence filed by Sameh Khaled Danhach (Docket Entry No. 489) is **DENIED**; and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

**The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this 19th day of January, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE